**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FLAVIO NUNEZ-REYES, aka Flavio
Reyes,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 05-74350

Agency No.
A078-181-648

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 6, 2009—San Francisco, California

Filed April 23, 2010

Before: Betty B. Fletcher, William C. Canby, Jr., and
Susan P. Graber, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Graber

**COUNSEL**

Frank P. Sprouls, Law Office of Ricci & Sprouls, San Francisco, California, for the petitioner.

Erica Miles and Keith I. Bernstein, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

PER CURIAM:

Petitioner Flavio Nunez-Reyes, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA's") decision denying his application for cancellation of removal. We grant the petition and remand for further proceedings.

Nunez-Reyes entered the United States in 1992. In 2001, he was charged in state court with one felony count of possession of methamphetamine, in violation of California Health and Safety Code section 11377(a), and one misdemeanor count of being under the influence of methamphetamine, in violation of California Health and Safety Code section 11550(a). He pleaded guilty to both counts, but the state court eventually

dismissed the charges under California Penal Code section 1210.1. Under that provision, the state court "shall . . . set aside [the conviction] and . . . dismiss the indictment" if the defendant successfully completes probation and other conditions are met. *Id.* § 1210.1(e)(1). "[E]xcept as provided [in other subsections], both the arrest and the conviction shall be deemed never to have occurred." *Id.*

In early 2002, the federal government issued a notice to appear, charging Nunez-Reyes as removable. Nunez-Reyes conceded removability but applied for adjustment of status due to his marriage to a United States citizen and cancellation of removal. After a series of hearings, the immigration judge ("IJ") denied all forms of relief and ordered Nunez-Reyes removed. The IJ held that the state convictions rendered Nunez-Reyes ineligible for any form of relief, regardless of whether the convictions had been dismissed.

On appeal, the BIA affirmed the IJ's decision. The BIA held that Nunez-Reyes' conviction for being under the influence of methamphetamine was a "conviction" for purposes of the immigration laws, and was "not one for which federal first offender treatment would be available." The BIA explained that the Federal First Offender Act ("FFOA"), 18 U.S.C. § 3607, "applies only to simple possession offenses described in 21 U.S.C. § 844." While recognizing that the Ninth Circuit has applied FFOA treatment to convictions for "lesser" offenses, the BIA reasoned that this expanded FFOA treatment applied only when the defendant had pleaded down from a charge explicitly covered by the FFOA, which Nunez-Reyes had not done. Further, the BIA found that the crime of being under the influence of a particular drug was not a lesser offense than simple possession. Because Nunez-Reyes' conviction would not have been eligible for FFOA treatment, the BIA explained, the expungement under California law did not erase the conviction for immigration purposes. Thus, the BIA held, Nunez-Reyes remained convicted of the controlled sub-

stance offense and could not demonstrate eligibility for cancellation of removal.

We review de novo the BIA's legal determinations. *Ramirez-Altamirano v. Holder*, 563 F.3d 800, 804 (9th Cir. 2009). "We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review the BIA's determination that a controlled substance conviction precludes immigration relief as a matter of law." *Id.* "Our review is limited to the actual grounds relied upon by the BIA." *Id.* If the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case. *Id.*

**[1]** In general, the FFOA permits federal courts to expunge a federal conviction for simple possession of drugs if the defendant has not previously been subject to an FFOA expungement and successfully completes up to one year of probation. 18 U.S.C. § 3607. The FFOA mandates that a successfully expunged conviction "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." *Id.* § 3607(b). Interpreting that provision, we have held that an alien has not been "convicted" if his or her federal conviction had been expunged under the provisions of the FFOA and that equal protection requires us to treat the expungement of a state conviction for simple possession in the same manner. *Lujan-Armendariz v. INS*, 222 F.3d 728, 734-49 (9th Cir. 2000); *Garberding v. INS*, 30 F.3d 1187, 1190 (9th Cir. 1994). We applied this logic in *Cardenas-Uriarte v. INS*, 227 F.3d 1132 (9th Cir. 2000), to the crime of possession of drug paraphernalia, reasoning that it, too, is a lesser offense than simple possession and thus qualifies for FFOA treatment if expunged under state law. *Cardenas-Uriarte*, 227 F.3d at 1137. We reasoned that Congress would not have considered including possession of drug paraphernalia under the FFOA because it is not a federal crime, but that congressional intent indicated the lesser crime of possession of drug paraphernalia should be given FFOA treatment. *Id.*

**[2]** Of particular relevance here, we recently held in *Rice v. Holder*, 597 F.3d 952 (9th Cir. 2010), that an individual convicted for the first time in state court of using or being under the influence of a controlled substance was eligible for the same immigration treatment as individuals convicted of drug possession under the FFOA. *Rice*, 597 F.3d at 957. There, the petitioner was charged with one felony count of possession of cocaine and one misdemeanor count of using or being under the influence of a stimulant under California law. *Id.* at 954. He pleaded nolo contendere and was convicted. *Id.* The court suspended the sentence and gave the petitioner three years of supervised probation. *Id.* At the completion of the probation term, the court set aside the nolo contendere pleas, entered not guilty pleas, and dismissed the original complaint. *Id.* The BIA, however, held that the petitioner's conviction for being under the influence rendered him ineligible for relief. *Id.* The BIA ruled that the crime of being under the influence was not eligible for FFOA relief because the FFOA applies only to simple possession offenses. *Id.*

We reversed, relying on *Cardenas-Uriarte*, and held that there was "no relevant distinction for present purposes between the offenses of possession of drug paraphernalia and using or being under the influence of a controlled substance, as both are generally less serious than simple possession." *Id.* at 956. "As with possession of drug paraphernalia, 'Congress would never have considered including' under the FFOA the offense of using or being under the influence of a controlled substance, because no federal statute covers that crime." *Id.* (quoting *Cardenas-Uriarte*, 227 F.3d at 1137).

**[3]** Here, as in *Rice*, Nunez-Reyes was charged with one count of felony possession and one misdemeanor count of being under the influence. He pleaded guilty and the state court dismissed the charges under California Penal Code section 1210.1. Thus, "the arrest and the conviction shall be deemed never to have occurred," *id.* § 1210.1(e)(1), and the conviction cannot be used to render Nunez-Reyes ineligible

for cancellation of removal. As in *Cardenas-Uriarte* and *Rice*, "[w]e can be sure that [being under the influence] is a lesser offense because it would be a misdemeanor once probation was successfully completed while possession of the drugs would have been a felony." *Cardenas-Uriarte*, 227 F.3d at 1137; *see also Rice*, 597 F.3d at 956. Thus, we hold that Nunez-Reyes' expunged conviction under California Health and Safety Code section 11550(a) for being under the influence may not be treated as a "conviction" for purposes of the immigration laws.

We also reject the BIA's holding that our reasoning in *Cardenas-Uriarte* is undermined because Nunez-Reyes "was charged with the same offense to which he ultimately pleaded guilty; he did not 'plead down' from a charge of simple possession." The holding in *Rice* clarifies, as we do here, that expanded FFOA treatment of lesser crimes does not depend on whether the petitioner originally was charged with simple possession and pleaded down from the charge. The proper focus is the petitioner's conduct, not the prosecutor's conduct. *See, e.g.*, *Ramirez-Altamirano*, 563 F.3d at 809 (stating that " 'the critical question is . . . what [the petitioner] did' " (alteration in original) (quoting *Lujan-Armendariz*, 222 F.3d at 738 n.18)).

We decline to address the government's other arguments concerning grounds on which the BIA did not rely. Because "we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case." *Id.* at 804 (internal quotation marks omitted).

**Petition GRANTED; REMANDED for further proceedings.**

GRABER, Circuit Judge, concurring:

Our recent opinion in *Rice v. Holder*, 597 F.3d 952 (9th Cir. 2010), answered the legal questions raised in this case, and no factual distinction exists. Therefore, I am compelled to concur in the per curiam opinion. *See generally Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc).

I write separately, however, to express my disagreement with our underlying rule that equal protection principles require Congress to treat aliens subject to a state expungement identically to aliens subject to a federal expungement. Though the genesis of that conclusion is understandable, its continued application is unjustified. Like others, I think that we should revisit our current rule. *See Rice*, 597 F.3d at 957-58 (Ikuta, J., concurring) (arguing that we should revisit this rule); *Ramirez-Altamirano v. Holder*, 563 F.3d 800, 816-17 (9th Cir. 2009) (Ikuta, J., dissenting) (same); *see also Dillingham v. INS*, 267 F.3d 996, 1012-13 (9th Cir. 2001) (Fernandez, J., dissenting) (suggesting that the rule is incorrect but concluding that, "for purposes of this case, that is neither here nor there").

In the years following the 1970 enactment of the Federal First Offender Act ("FFOA"), the BIA held that an expunged state conviction for simple possession of drugs was not a "conviction" for purposes of the immigration laws, provided that the state expungement statute was a "state counterpart" to the FFOA. *In re Deris*, 20 I. & N. Dec. 5, 11 (B.I.A. 1989); *In re Werk*, 16 I. & N. Dec. 234, 235 (B.I.A. 1977). In many states, the state expungement statute qualified as a "state counterpart" to the FFOA, and an alien's expunged conviction generally had no bearing on his or her rights under the immigration laws. In other states, however, the state expungement statute was not a "state counterpart" to the FFOA because it permitted expungement of crimes of greater seriousness than simple possession. *In re Deris*, 20 I. & N. Dec. at 11. In those states, *all* expungements were invalid for purposes of the

immigration laws, even if the alien in question had been convicted only of simple possession. *Id.*

In *Garberding v. INS*, 30 F.3d 1187, 1190 (9th Cir. 1994), we held that the BIA's rule violated equal protection principles as applied to the petitioner's expunged Montana conviction for simple possession: "[T]here is no rational basis for treating Garberding differently. Had she possessed her marijuana in Michigan, Virginia or Wisconsin, she would not have been subject to deportation." We explained: "The state legislature in Montana has seen fit to extend the privilege of expungement to persons who are convicted of drug offenses more serious than Garberding's simple first time possession. It is this fortuitous circumstance, not Garberding's conduct, which the INS used to distinguish her for deportation." *Id.* at 1191. The next year, the BIA accepted our persuasive reasoning and adopted our approach. *In re Manrique*, 21 I. & N. Dec. 58 (B.I.A. 1995).

In 1996, however, Congress enacted a new definition of the term "conviction" for immigration purposes:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Before any of our sister circuits had interpreted the effect of this new definition with respect

to state-court expungements of drug possession convictions, we decided *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000). We framed the question as whether the new definition impliedly repealed the FFOA, and we held that it had not. *Id.* at 743-49. Because there had been no implied repeal, we held that we remained bound by *Garberding*'s holding that, "as a matter of constitutional equal protection, . . . the benefits of the Act [must] be extended to aliens whose offenses are expunged under state rehabilitative laws, provided that they would have been eligible for relief under the Act had their offenses been prosecuted as federal crimes." *Lujan-Armendariz*, 222 F.3d at 749. In a footnote, we rejected the government's argument that there was a rational basis for treating aliens subject to an expunged state conviction differently than aliens subject to an expunged federal conviction. *See id.* at 743 n.24 ("Most important, INS counsel offered no reason, and we cannot conceive of any, why Congress would have wanted aliens found guilty of federal drug crimes to be treated more leniently than aliens found guilty of state drug crimes.").

Since then, not only has the BIA rejected our analysis, but so has every sister circuit—seven in total—to have addressed the issue. *In re Salazar-Regino*, 23 I. & N. Dec. 223, 235 (B.I.A. 2002) (en banc); *Danso v. Gonzales*, 489 F.3d 709, 716 (5th Cir. 2007); *Ramos v. Gonzales*, 414 F.3d 800, 805-06 (7th Cir. 2005); *Resendiz-Alcaraz v. U.S. Attorney Gen.*, 383 F.3d 1262, 1271-72 (11th Cir. 2004); *Elkins v. Comfort*, 392 F.3d 1159, 1163-64 (10th Cir. 2004); *Acosta v. Ashcroft*, 341 F.3d 218, 224-27 (3d Cir. 2003); *Vasquez-Velezmoro v. INS*, 281 F.3d 693, 697-98 (8th Cir. 2002); *Herrera-Inirio v. INS*, 208 F.3d 299, 304-09 (1st Cir. 2000). The BIA held:

> After considering the analysis set forth in *Lujan-Armendariz* . . . , we decline to apply the ruling in that decision to cases arising outside of the jurisdiction of the Ninth Circuit. We therefore conclude that, except in the Ninth Circuit, a first-time simple drug

possession offense expunged under a state rehabilitative statute is a conviction under [the immigration laws].

*In re Salazar-Regino*, 23 I. & N. Dec. at 235.

It is easy to understand why the BIA and our sister circuits have disagreed with our view. The issue is whether there is any rational basis to distinguish between aliens subject to a state expungement and aliens subject to a federal expungement. A very relaxed form of rational basis review applies to this inquiry: "[F]ederal classifications based on alienage are subject to relaxed scrutiny. Federal classifications distinguishing among groups of aliens thus are valid unless wholly irrational." *Garberding*, 30 F.3d at 1190 (citation and internal quotation marks omitted); *see also Abebe v. Mukasey*, 554 F.3d 1203, 1206 (9th Cir. 2009) (en banc) (per curiam) ("Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens."), *petition for cert. filed*, 78 U.S.L.W. 3322 (U.S. Nov. 16, 2009) (No. 09-600).

Our sister circuits have held that this relaxed standard easily is met here. The Third Circuit put it well:

Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advan-

tage of those state schemes to escape what is considered a conviction under state law. Particularly in view of Congress's power in immigration matters, it seems plain that rational-basis review is satisfied here.

*Acosta*, 341 F.3d at 227.

I would offer another rational basis. Not all states permit expungement. A person convicted in such a state would be ineligible for relief under the immigration laws, whereas a person convicted in a different state would be eligible. Congress reasonably could have concluded that, in the strong interest of uniformity, it would not recognize *any* state expungements rather than adopt a piecemeal approach.

When we decided *Lujan-Armendariz*, we did not have the benefit of our sister circuits' contrary opinions or the BIA's contrary opinion. *See Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir. 2008) ("National uniformity in the immigration context also counsels deference where, as here, a failure to defer would cause a split of authority among the circuits."). Importantly, in my view, we also did not have the benefit of the BIA's decision to deny recognition of state expungements under *all* state expungement statutes. Our holding in *Garberding*—that it is irrational to recognize *some* states' expungements but not others'—is inapposite in light of the BIA's current interpretation.

In summary, were we writing on a blank slate, or were we to reconsider our rule en banc, I would join our sister circuits' unanimous recognition that Congress reasonably distinguished between aliens subject to a state expungement and aliens subject to a federal expungement.